SOUTHARD, Respondent, v. OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Appellant.

*May 11—June 7, 1966.*

For the appellant there was a brief by *Chambers, Nash, Pierce & Podvin* of Wisconsin Rapids, and oral argument by *Francis J. Podvin.*

For the respondent there was a brief by *Hosek, Zappen & Meissner* of Marshfield, and oral argument by *Carl L. Meissner.*

HALLOWS, J. We hold a question of law rather than a question of fact is raised by the affidavits and should

be decided upon the defendant's motion under the rule laid down in *Bond v. Harrel* (1961), 13 Wis. (2d) 369, 108 N. W. (2d) 552; *Rabinovitz v. Travelers Ins. Co.* (1960), 11 Wis. (2d) 545, 105 N. W. (2d) 807; and *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 103 N. W. (2d) 9. In its affidavit in support of its motion, the defendant sets forth the application and states it relied thereon in insuring Southard. The critical question in the application concerning the applicant's health asked, "During the last two years have you had heart disease, diabetes, lung disease, cancer or any other serious illness, or received treatment or medication for blood pressure?" To this inquiry, Southard answered "No."

From the affidavits it is clear and without dispute that Robert R. Southard severed his spine in a swimming accident in June 1954, that as a result he had a non-functioning nervous system and was partly paralyzed, that the paralysis affected both his arms and legs, making him a quadriplegic, that he had no control of his normal bladder functions and it was necessary to have a cystotomy tube inserted in his bladder, that this tube caused a chronic cystitis condition which necessitated continual medical treatment for leakage and bleeding around the tube and that from the time of the 1954 swimming accident until his death the applicant was confined to a wheelchair.

The defendant's affidavit claims this condition was a serious illness and thus the answer in the application was a misrepresentation; and on the contrary the plaintiff's affidavit claims such condition was not a serious illness, was not considered so by the applicant, and in spite of his handicap the applicant completed his college education at the University of Wisconsin and the Eau Claire State Teacher's College, established a successful insurance agency in Eau Claire, was president of the Sheltered for Handicapped, Inc., and was chosen Wisconsin's handicapped person for 1960. The cause of

death given in the death certificate was "Pul.[monary] Atelectasis & Pneumonia" with "Quadriplegia" and "Septicemia" as significant conditions contributing to death but not related to the terminal disease.

We hold the applicant did not have a serious illness at the time he made the application for group life insurance coverage. What constitutes a serious illness must be construed in the light of the particular use of the word and in its context. Here, the defendant solicited the application for life insurance by mail and required no physical or medical examination. Only two questions directly relating to insurability were asked. The first inquired whether the applicant had been confined to a hospital or sanitorium within the last two years, to which the applicant answered "No." The second question, claimed to be falsely answered, asked whether "During the last two years" the applicant "had heart disease, diabetes, lung disease, cancer or any other serious illness, or received treatment or medication for blood pressure?" Under the familiar canon of construction of *ejusdem generis,* "other serious illness" would mean an illness of the same general seriousness and classification as cancer, or diabetes, or heart and lung disease. See 17A C. J. S., Contracts, p. 173, sec. 313. These diseases all relate to and seriously affect the general soundness and health of a person and require continuous medical treatment. Quadriplegia is not such an illness, if it is an illness at all. This inquiry in the application relating to insurability is limited and does not cover all illnesses but only serious illnesses of a limited classification. This and the question relating to confinement in a hospital or sanitorium and treatment for blood pressure were all the insurance company was interested in or considered necessary for the type of group life insurance offered. It does not ask whether the applicant was free from any physical impairment, whether he considered himself in good health, or except for blood pressure whether he had

received any medical treatment or advice. Obviously the risks assumed under this group plan are greater than those assumed under individual policies requiring more detailed information and a medical examination and presumably the premiums were related and adjusted to the risks thus assumed.

The inquiry in the application called for a layman's answer, not a medical opinion. An insurer soliciting by mail applications for life insurance from laymer cannot expect medical opinions as answers to inquiries. Conversely, the applicant must make a reasonable use of his faculties in endeavoring to understand and answer the questions asked of him and his answers must be made fairly and in good faith. Nor can an insurer inquire about a few illnesses and expect a complete medical history in response. The questions must "fetch the answer."

It is no doubt true the applicant's condition was material to the risk in the sense it would have influenced an insurance company in its rejection of the application. However, such relationship does not necessarily make the applicant's condition an illness. There can be healthy handicapped people.

True, quadriplegia is a serious physical impairment but so is the loss of a limb, or blindness, or total deafness. But such handicaps are not commonly thought of as illnesses even though they may possibly tend to shorten the span of life by increasing the risk of accidental death. A tube in a bladder to aid its functioning would seem to be a condition or an aid to a physical impairment, not an illness. If the existence of the tube constitutes an illness because it aids the functioning of the human body, then other aids like glasses and hearing aids must be considered *indicia* of an illness, but obviously this is not true.

In *Schneider v. Wisconsin Life Ins. Co.* (1956), 273 Wis. 105, 113, 76 N. W. (2d) 586, this court approved the definition of the term "illness" as, "Within the

meaning of a statement by an applicant in such respect, the term 'illness' means a disease or ailment which is of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine and weaken the constitution." This definition was taken from 29 Am. Jur., Insurance, pp. 1005, 1006, sec. 745. See also Anno. 153 A. L. R. 709, which states "serious illness" or "disease" means only such illnesses or diseases as are likely to be attained by a permanent or material impairment of the health or constitution and do not include such as are merely temporary in duration and the effect of which has entirely passed away. As lay persons use the term "illness," Southard may have been seriously handicapped but he had no serious illness.

Even though the applicant's handicap was not a serious illness, the question arises whether he was under a duty to disclose it because as an insurance man he must have known it was material to the risk. The trial court was of the opinion Southard had a duty to disclose his condition because contracts of insurance are traditionally *uberrimae fidei,* relying on *Stipcich v. Insurance Co.* (1928), 277 U. S. 311, 316, 317, 48 Sup. Ct. 512, 72 L. Ed. 895. We do not agree and also point out no defense was made on the question of concealment. It was pointed out in the *Stipcich Case,* which was cited in *Fjeseth v. New York Life Ins. Co.* (1963), 20 Wis. (2d) 295, 122 N. W. (2d) 49, that the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed the rule of the duty to disclose known material facts because the information not asked for in such an application is presumed to be unimportant to the insurance company.

This is not a case like *Fjeseth* where the applicant was under a duty to disclose information called for in the insurance application which was subsequently acquired and which made misleading an answer in the application

upon which the applicant knew the insurance company was about to rely. Here, no previous answer was made which subsequently but before the issuance of the policy turned out to be false.

A person in a business deal must be under a duty to disclose a material fact before he can be charged with a failure to disclose. Restatement, 3 Torts, p. 117, sec. 551 (1), states the rule as follows: "One who fails to disclose to another a thing which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter which he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question." In the specialized field of insurance where a detailed application is used by an insurance company to obtain the information it considers necessary for the writing of the risk, it generally has been considered the applicant's duty has been fulfilled upon making full answers without evasion, suppression, misrepresentation or concealment of the facts within the reasonable scope of the inquiry. 12 Appleman, Insurance Law and Practice, Duty to Disclose, p. 392, sec. 7292. Under this view the applicant is under no duty to volunteer information beyond the scope of the questions asked him. In 9 Couch, Insurance (2d ed.), p. 376, sec. 38:58, it is stated: "The insured is not obligated to volunteer statements of every circumstance which anybody may subsequently deem important as affecting the risk upon his life, for it is requisite only that he answer all questions truly, make no untrue statements, and submit himself to a full examination."

Many of the facts set forth in the affidavit in support of the motion are on information and belief and by the defendant's counsel. Evidentiary facts stated on information and belief are not sufficient to grant summary

judgment under the rule laid down in *Leszczynski v. Surges* (1966), 30 Wis. (2d) 534, 141 N. W. (2d) 261; *Dottai v. Altenbach* (1963), 19 Wis. (2d) 373, 120 N. W. (2d) 41; and *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 105 N. W. (2d) 305. Besides, affidavits of counsel should only be used for routine noncontroversial facts which are within his personal knowledge. An attorney represents his client and he should not be a witness or an affiant to evidentiary facts relating to the merits of the cause. However, since the material facts stated on information and belief were supplemented and verified by the affidavit on personal knowledge submitted in opposition to the motion, we deemed it desirable to consider the merits of the question of law raised rather than decide the appeal on procedural grounds.

*By the Court.*—Order affirmed.