Mark A. RAMSDEN, Individually and d/b/a Ramsden Dairy, Raelynn Ramsden, Individually and d/b/a Ramsden Dairy, and Milton R. Ramsden, Individually and d/b/a Ramsden Dairy, Plaintiffs-Appellants,

v.

FARM CREDIT SERVICES OF NORTH CENTRAL WISCONSIN ACA, and Agribank, FCB, Defendants,

Thomas E. HASS, Defendant-Respondent.

Court of Appeals

No. 97–2769. *Submitted on briefs August 7, 1998.—Decided December 23, 1998.*

(Also reported in 590 N.W.2d 1.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Charles B. Harris* and *Martha Heidt* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Craig T. Maxwell* of *Peterson, Wieting, Calewarts, Duffy & Maxwell* of Green Bay.

Before Eich, Vergeront and Roggensack, JJ.

ROGGENSACK, J.  Mark, Raelynn and Milton Ramsden appeal an order of the circuit court dismissing their complaint as to Thomas Hass, an agent of Agribank, FCB and Farm Credit Services of North Central Wisconsin, ACA (FCS). The circuit court concluded that the Ramsdens did not state a claim against Hass for negligent misrepresentation[1] in connection with the sale of a dairy farm to the Ramsdens, because absent a special duty of care, agents are not liable to third persons under theories of negligence. We conclude that under certain circumstances agents may be liable to third persons for both their untrue statements of material fact and for failing to disclose material facts concerning the condition of property and that the Ramsdens stated claims for intentional and negligent

---

[1] The circuit court did not directly address the Ramsdens' claim for intentional misrepresentation when it dismissed the complaint as to Hass.

708

misrepresentation. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

According to the complaint,[2] on March 19, 1996, the Ramsdens were the high bidders on a dairy farm sold at public auction by Agribank. FCS, who had financed the prior owners, Triple L Dairy, also financed the Ramsdens' purchase, which closed on April 17, 1996. Hass, an Agribank employee and an agent of both Agribank and FCS, was the auctioneer and he also handled the details of the Ramsdens' purchase from Agribank.

While Triple L Dairy was the owner of the property, it had complained to Hass, Agribank and FCS that its cattle were sick and dying. After investigation and prior to selling the property to the Ramsdens, Agribank, FCS, and Hass learned that an underground gasoline storage tank on the property was leaking and contaminating the soil. On June 15, 1995, Hass reported to the Department of Natural Resources that groundwater on the property was contaminated. Thereafter, Agribank was directed to remove the underground storage tank and to remedy the contamination to the property, in both the soil and in the groundwater. Agribank removed the tank, but it did not remedy the contamination. Notwithstanding their knowledge of the contamination and its effect on dairy

[2] Because the Ramsdens' appeal arises from a motion to dismiss for failure to state a claim, for purposes of this appeal, we assume that all statements of fact and the reasonable inferences therefrom set forth in the complaint are true. *Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610, 535 N.W.2d 81, 83 (Ct. App. 1995).

cows, Agribank and Hass sought to sell the property as a dairy farm.

At the auction, Hass told the Ramsdens, who said they were considering buying the property for a dairy farm, that: (1) Agribank would be responsible for any contamination, cleanup or problems associated with an underground storage tank that had leaked; (2) the property was suitable for use as a dairy farm; and (3) there was plenty of good, clean water available for the cattle. Hass did not mention that the groundwater had been contaminated or that Triple L's cattle had died. Based on Hass's factual representations and the failure of Hass, Agribank and FCS to disclose that the groundwater was not fit for consumption and that the prior owner's cattle had died, the Ramsdens bought the property.

On April 18, 1996, the Ramsdens moved their cattle onto the property. By April 20, 1996, the cows began to appear depressed, ceased producing milk, and exhibited sunken eyes, general weakness, bellowing, and a lack of appetite. By April 23, 1996, four of the cows had died. Mark Ramsden also became ill. To determine the cause of these problems, the Ramsdens submitted water samples to the University of Wisconsin at Stevens Point. The samples showed benzene contamination from the underground storage tank that had leaked. The Ramsdens also had a local toxicologist perform a necropsy on one of the dead cows. The toxicologist determined that the cow had died of benzene poisoning.

As a result of the benzene poisoning, the Ramsdens suffered the loss of 186 head of cattle and the loss of profits from the operation of their dairy. Additionally, Mark Ramsden suffered personal injuries, both physical and emotional, due to benzene poisoning. On

February 17, 1997, the Ramsdens filed a *pro se* complaint alleging thirteen claims for relief against Agribank, FCS, and Hass. Hass moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to § 802.06(2)(a)6., Stats. On June 16, 1997, the circuit court granted Hass's motion to dismiss because Hass made the representations as an agent. This appeal followed.

## DISCUSSION

**Standard of Review.**

Whether a complaint states a claim upon which relief can be granted is a question of law, which we review *de novo. Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610, 535 N.W.2d 81, 83 (Ct. App. 1995). A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim. *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 24, 288 N.W.2d 95, 98 (1980). Therefore, we admit as true all facts pleaded and all reasonable inferences from the pleadings, but only for the purpose of testing the legal sufficiency of the claim, not for the purpose of trial. *Id.* A complaint does not need to state all the ultimate facts constituting each cause of action, and we will not affirm the dismissal of a complaint as legally insufficient unless "it is quite clear that under no conditions can the plaintiff recover." *Id.* at 24, 288 N.W.2d at 98–99.

**Ramsdens' Complaint.**

The Ramsdens' complaint alleges thirteen claims for relief. The first claim, negligence *per se*, is premised on Agribank's failure to provide a condition of real

estate disclosure form as required by § 709.02, STATS. Because that statute applies only to property owners, the first claim for relief is not directed at Hass. Similarly, the second claim, negligent remediation, is not directed at Hass because the claim is premised on Agribank's duty to remedy the contamination.

The third, fourth, fifth, and seventh claims are either breach of warranty claims directed at Agribank or breach of contract claims involving the contract between the Ramsdens and Agribank; and therefore, they do not pertain to Hass. The sixth claim, which alleges that the defendants maintained a nuisance on the property, is directed only at the owner, Agribank, as are the ninth and tenth claims. The eighth claim is strict liability for misrepresentation. However, there is no allegation that Hass had a financial interest in the property, a necessary element of a claim for strict liability for misrepresentation. *Whipp v. Iverson*, 43 Wis. 2d 166, 169–70, 168 N.W.2d 201, 203 (1969).

Finally, the twelfth and thirteenth claims, alleging breaches of the requirement of good faith, do not state tort claims in Wisconsin under the facts set forth in the complaint. *Hauer v. Union State Bank of Wautoma*, 192 Wis. 2d 576, 595, 532 N.W.2d 456, 463 (Ct. App. 1995) (concluding that a breach of the covenant of good faith and fair dealing does not state a separate cause of action in Wisconsin from the contract claim from which it arises, absent special circumstances not present here); *Alsteen v. Gehl*, 21 Wis. 2d 349, 356, 124 N.W.2d 312, 316 (1963) (concluding that a claim for intentional infliction of emotional distress requires extreme and outrageous conduct undertaken for the purpose of inflicting psychological harm).

Therefore, of the thirteen claims presented in the complaint, only the eleventh claim, which is directed at

Hass and is based on representations he made, will be the focus of our discussion. In this claim, which incorporates all allegations previously made, it is asserted that Hass told the Ramsdens that Agribank would remedy the contamination from an underground storage tank that had leaked; that the property was suitable for use as a dairy farm; and that the property had plenty of clean water for the cattle. The Ramsdens also allege that: (1) Hass failed to disclose that the cattle of the previous dairy farmer had died over the last several years; (2) the groundwater was contaminated and that Agribank had been ordered to remedy the contamination and it had not done so; (3) Hass had a duty to disclose the true condition of the property; (4) if facts about the property had not been misrepresented by the defendants' false statements and their failures to disclose the true condition of the property, the Ramsdens would not have purchased it; and (5) the misrepresentations caused them to suffer economic loss and personal injuries, both physical and emotional.

## Misrepresentation.

There are three types of misrepresentation: strict liability for misrepresentation, negligent misrepresentation, and intentional misrepresentation. *Whipp*, 43 Wis. 2d at 169, 168 N.W.2d at 203. The development of the law of misrepresentation in regard to each of these three types of claims has divided into two lines of cases. One line of cases is based on claims that arise from the failure to disclose a material fact and the other line is bottomed on the statement of a material fact which is untrue. *Southard v. Occidental Life Ins. Co.*, 31 Wis. 2d 351, 359, 142 N.W.2d 844, 848 (1966).

For example, in *Ollerman*, 94 Wis. 2d at 51–52, 288 N.W.2d at 112, the supreme court concluded that a claim for intentional misrepresentation exists for intentionally failing to disclose a material fact,[3] when there is a duty to speak, but it left open the question of whether a claim for negligent misrepresentation can be based on the failure to disclose.[4] In Wisconsin, negligence is based on the breach of a duty of care. It is the duty of each person to exercise ordinary care to refrain from any act which will cause foreseeable harm to another. *Id.* at 46, 288 N.W.2d at 109. Therefore, in order to state a claim for negligent misrepresentation it must be reasonably foreseeable, based on an objective standard, that harm will result from one's action or failure to act. *Id.* at 47, 288 N.W.2d at 109. Whether the harm is "reasonably foreseeable" depends to some degree on whether the claimed injury is commercial or personal. *Id.* at 50–51, 288 N.W.2d at 111. This is so because the range of personal injuries are generally more limited and therefore more reasonable to foresee, but purely economic harms may be much farther reaching and therefore not as reasonable to foresee. *Id.* at 51, 288 N.W.2d at 111. Public policy concerns may further limit when claims for relief exist, if they are based on purely economic injuries. *Citizens State Bank v. Timm,*

---

[3] If there is a duty to disclose a fact, the failure to disclose that fact is treated under the law as a representation that the fact does not exist. *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 26–27, 288 N.W.2d 95, 99–100 (1980) (citing *Southard v. Occidental Life Ins. Co.*, 31 Wis. 2d 351, 359, 142 N.W.2d 844, 848 (1966)).

[4] In *Grube v. Daun*, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992), we concluded that negligent failure to disclose may give rise to a claim for relief, if there is a duty to speak.

*Schmidt & Co., S.C.*, 113 Wis. 2d 376, 385–86, 335 N.W.2d 361, 365–66 (1983).

The Ramsdens contend they have pled claims for both negligent and intentional misrepresentation,[5] based on both Hass's failure to disclose and on his untrue factual statements. They claim economic and personal injuries and their claims present the additional complication of allegations made against an agent. It was because Hass made the representations as an agent that the circuit court dismissed the complaint against him.

In *Grube v. Daun*, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992), we examined whether a seller's agent who makes a representation of fact which he did not know was untrue could be held liable for the representation when the property was sold in an "as is" condition. We restated the general rule that an agent who does an act that would be a tort if he were not then acting as an agent for another is not relieved from liability to an injured third party, simply because he was acting as an agent when he caused the injury. *Id.* at 51, 496 N.W.2d at 113 (citing *Purtell v. Tehan*, 29 Wis. 2d 631, 639, 139 N.W.2d 655, 659 (1966)). We concluded that one can make a claim against a seller's agent in a real estate sale for both negligent misrepresentation and intentional misrepresentation, grounded on either a material factual statement which was untrue or on the failure to disclose a material fact when

---

[5] The eleventh claim is captioned, "FRAUD BY CONCEALMENT AND FRAUDULENT SALES PRACTICES," which implies only intentional misrepresentation. However, the eleventh claim also incorporates all the allegations from the preceding 115 paragraphs in the complaint, as well as adding twelve new paragraphs.

there was a duty to speak. *Grube*, 173 Wis. 2d at 55–56, 496 N.W.2d at 115.

In *Greenberg v. Stewart Title Guaranty Co.*, 171 Wis. 2d 485, 492 N.W.2d 147 (1992), the supreme court carefully examined the obligations of both the principal (Stewart Title, the issuer of title insurance) and its agent (Southwestern, who searched the title) to Greenberg, who had purchased a policy of title insurance from Stewart Title. The court concluded that Stewart Title had contracted to provide a policy of insurance that would pay Greenberg up to a stated amount if there were a defect in the title that had not been excepted from coverage under the policy. It also concluded that Stewart Title did not assume a duty to search the title for Greenberg's benefit by selling him a title insurance policy. In other words, if Stewart Title had chosen to issue the policy without examining the title, it was free to do so under its agreement to indemnify Greenberg. The court further concluded that any title search done by Southwestern was only for the benefit of Stewart Title, in order to lower its potential risk when issuing the policy of insurance; and therefore, Southwestern owed no duty to Greenberg. In order for Southwestern to be liable to Greenberg, Southwestern would have had to have had an independent duty to Greenberg. Since it did not, there could have been no breach of duty by Southwestern, even if it negligently conducted the title search. *Id.* at 495, 492 N.W.2d at 151–52. The supreme court's opinion in *Greenberg* did not change the liability rules in regard to potential negligence claims against agents. It simply explained why Southwestern had no duty to Greenberg, and it reaffirmed that without a duty of care owed to Greenberg, Southwestern could not be liable to him for its acts.

716

We reviewed *Greenberg* when we decided *Krawczyk v. Bank of Sun Prairie*, 203 Wis. 2d 556, 553 N.W.2d 299 (Ct. App. 1996), on which the circuit court relied in dismissing the complaint as to Hass. In *Krawczyk*, the Bank of Sun Prairie contracted to act as the trustee of trusts used to maintain two Wisconsin cemeteries. Livingston was the vice-president in charge of the trust funds. When a significant portion of the funds were lost through what was contended to be negligent management by Livingston, Krawczyk, a special trustee, sued the bank, Livingston[6] and the bank's insurer. The insurer paid Krawczyk for the lost funds and obtained an assignment of Krawczyk's claims against Livingston. It was the bank's insurer who then attempted to proceed against Livingston. In concluding that Livingston had no duty of care to Krawczyk when he performed services[7] for the bank, we relied on *Greenberg* because Livingston had provided no services to Krawczyk, just as Southwestern had provided no services to Greenberg. *Id.* at 567, 553 N.W.2d at 303. We acknowledged that losses can, at times, be recouped for negligent conduct in a commercial context,[8] such as was presented in *Krawczyk. Id.* at

[6] Krawczyk sued Livingston for breach of fiduciary duty and negligent management. However, on appeal, Krawczyk agreed he had no basis to pursue the breach of fiduciary duty claim.

[7] The services Livingston provided to the bank were facilitating the transfers of trust funds to reputable, licensed brokerage houses, such as Thompson McKennon Securities and A.G. Edwards & Sons, Inc., where the agents of those brokerage houses mismanaged and lost the funds.

[8] *See also A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 214 N.W.2d 764 (1974) (architect who negligently constructs building may be liable to a third party with whom the architect has no privity of contract, if liability is not precluded

566, 553 N.W.2d at 303. However, we concluded there must first have been a reasonably foreseeable injury that would result from Livingston's transferring funds to licensed brokerage houses, before an independent duty would arise between Krawczyk and Livingston. *Id.* at 567, 553 N.W.2d at 303. Although unstated in our opinion, but apparent in the reasoning that underlies our decision, we concluded that Krawczyk's commercial injury, which resulted from the mismanagement of the funds by the agents of the brokerage houses, was too remote to have been reasonably foreseeable by Livingston when he facilitated the transfer of funds to the brokerage houses on behalf of the bank. Therefore, Livingston had no independent duty to Krawczyk; and, even if he had been negligent in the provision of services to the bank, Krawczyk's claim against him was properly dismissed. The Ramsdens contend they have stated claims against Hass for both intentional and negligent misrepresentation.

### 1. *Intentional misrepresentation.*

To state a claim for intentional misrepresentation,[9] a complaint must allege that: (1) the defendant made a factual representation; (2) which was untrue;

by public policy considerations); *Citizens State Bank v. Timm, Schmidt & Co., S.C.* 113 Wis. 2d 376, 335 N.W.2d 361 (1983) (certified public accounting firm may be liable to third person with whom the firm had no privity of contract for an audit report the firm prepared in preparation for the firm's client obtaining a loan).

[9] Intentional misrepresentation is another term for fraudulent misrepresentation. *Ollerman,* 94 Wis. 2d at 24, 288 N.W.2d at 99.

(3) the defendant either made the representation[10] knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment. *Grube*, 173 Wis. 2d at 53–54, 496 N.W.2d at 114.

There is no insulation from liability under the law for making untrue factual statements about the condition of property during the course of a sale. An agent who makes factual statements that are untrue may incur liability, just as a principal does when he/she makes such statements. *Appleton Chinese Food Serv., Inc. v. Murken Ins., Inc.*, 185 Wis. 2d 791, 804, 519 N.W.2d 674, 678 (Ct. App. 1994) (citing *Ford v. Wisconsin Real Estate Exam. Bd.*, 48 Wis. 2d 91, 102, 179 N.W.2d 786, 792 (1970)). Therefore, Hass may be liable, provided that the Ramsdens have properly pled the elements of intentional misrepresentation.

The Ramsdens alleged that Hass made factual representations about the suitability of the property for a dairy farm when they listed Hass's three material, affirmative statements.[11] Second, they alleged that

---

[10] A claim of intentional misrepresentation also may be based on the failure to disclose a material fact, when there is a duty to disclose. *Id.* at 26–27, 288 N.W.2d at 99–100.

[11] The Ramsdens also argue in their brief that Hass is liable for his tortious acts committed while acting in his capacity as a servant or auctioneer. The Ramsdens' complaint merely identifies Hass as the auctioneer but does not contain any allegation that he should be liable as either a servant or an auctioneer. Additionally, the Ramsdens raise this issue for the first time on

those statements were untrue, by noting that the groundwater was contaminated with benzene. Third, they pled his knowledge by stating that Hass was aware of the problems with the property due to his contact with the prior owners. Fourth, the Ramsdens pled the element of intent to defraud when they alleged that Hass "induced Plaintiffs to purchase the subject real property by concealing from Plaintiffs the true condition of the property" and when they alleged that Hass intentionally failed to disclose known defects in order to sell the property to the Ramsdens. Finally, the Ramsdens alleged that they relied on Hass's misstatements to their detriment by stating that they would not have purchased the property and suffered the loss of their cattle, the loss of profits, and personal injury from the contamination, but for Hass's statements and failures to disclose. Therefore, because they have properly pled all the elements of intentional misrepresentation, the Ramsdens have stated a claim against Hass, even though he was an agent of Agribank. [12]

## 2. Negligent misrepresentation.

appeal; therefore, we do not consider whether Hass is liable for torts committed while acting as a servant or auctioneer. *See Bank One, Appleton, NA v. Reynolds*, 176 Wis. 2d 218, 222, 500 N.W.2d 337, 339 (Ct. App. 1993).

[12] The reader should note that we do not decide whether Hass, as the agent of Agribank and FCS, had a duty to the Ramsdens to disclose his knowledge about the condition of the property *before* he made the untrue statements at issue here. However, once he made factual representations to the Ramsdens about the condition of the property relative to the leak from the gasoline storage tank, he was not free to omit material facts about that condition that could have affected their decision to purchase. *Ollerman* 94 Wis. 2d at 31, 288 N.W.2d at 102.

In order to plead a claim sounding in negligence, one must allege: "1) a duty of care on the part of the defendant; 2) a breach of that duty; 3) a causal connection between the conduct and the injury; and 4) an actual loss or damage as a result of the injury." *Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 15, 402 N.W.2d 711, 717 (1987). A claim for negligent misrepresentation has been described as requiring that: (1) defendant made a factual representation; (2) which was untrue; (3) which plaintiff believed to be true and relied on to his/her detriment; and (4) defendant breached his duty of care to plaintiff in making the representation at issue. *Grube*, 173 Wis. 2d at 55, 496 N.W.2d at 115. Reliance, in a negligent misrepresentation claim, is equivalent to the causation element set forth in *Robinson*. Additionally, when we review whether a claim has been stated, pleadings must be liberally construed in favor of the plaintiff. *Robinson*, 137 Wis. 2d at 16, 402 N.W.2d at 717.

The Ramsdens pled that Hass's untrue statements and failures to disclose were the proximate causes of their harm and that Hass had a duty not to misrepresent material facts. As explained in footnote 12 above, Hass, as an agent, may not have had an initial duty to disclose his knowledge of the property to the Ramsdens because any disclosure may have been contrary to the interests of his principal, Agribank. However, once Hass made factual statements about the leaky underground storage tank and its contamination of the property, he assumed a duty to the Ramsdens to make truthful statements. Additionally, he then was not free to omit material facts about that condition of the property on which he had spoken, which omissions would

have foreseeably affected the Ramsdens' decision about whether to purchase the property for use as a dairy farm. Therefore, we conclude that the Ramsdens' have also pled a claim for negligent misrepresentation.

## CONCLUSION

The holdings in *Krawczyk* and *Greenberg* do not preclude a finding of liability when an agent affirmatively misstates the condition of property to a potential buyer because he assumes a duty to speak truthfully, if he speaks at all. And, once he has spoken, he may not omit material facts relevant to the same condition of the property on which he has spoken, which omissions would foreseeably affect a potential buyer's decision about whether to purchase or not. Because the Ramsdens alleged that Hass made affirmative statements about the property in regard to its contamination from the leakage of the underground storage tank, and because they properly pled the elements of intentional and negligent misrepresentation under our liberal pleading rules, the Ramsdens have stated claims against Hass and their complaint should not have been dismissed as to him.

*By the Court.*—Order reversed and cause remanded.