STARK, P.J.
*595 ¶1 Emer's Camper Corral, LLC, ("Camper Corral") sued Michael Alderman and Alderman, Inc. d/b/a Jensen-Sundquist Insurance Agency (collectively, "Alderman"), asserting a single claim for negligence. Specifically, Camper Corral alleged that Alderman breached his duty as its insurance agent by procuring a policy for Camper Corral that contained a $ 5000 per-unit deductible for hail damage claims, instead of a policy with a $ 1000 per-unit hail damage deductible and an aggregate hail damage deductible of $ 5000. The case proceeded to a jury trial, and the circuit court ultimately granted Alderman's motion for a directed verdict on two grounds: (1) Camper Corral failed to present an expert witness to testify regarding *596 the standard of care; and (2) Camper Corral failed to establish that Alderman's alleged negligence caused its damages.
¶2 We conclude the circuit court properly granted Alderman a directed verdict. To prevail on its negligence claim, Camper Corral was required to prove that Alderman's conduct caused Camper Corral's damages-that is, that his conduct was a substantial factor in producing those damages. In order to do so, Camper Corral needed to establish that, but for Alderman's alleged negligence, Camper Corral could have obtained a policy that included a lower hail damage deductible than the policy Alderman actually obtained. Camper Corral failed to produce any evidence supporting a conclusion that it would have been able to obtain such a policy, absent Alderman's alleged negligence. As such, Camper Corral could not establish, as a matter of law, that Alderman's conduct was a cause of its damages. We therefore affirm the circuit court's decision granting Alderman a directed verdict.[1]
BACKGROUND
¶3 Camper Corral is a business that sells new and used campers. It is co-owned by Rhonda Emer and her husband. Camper Corral first purchased insurance through Alderman sometime in 2004 or 2005 when it needed to insure a recently completed building. In approximately 2007, Camper Corral first obtained a "garage policy" through Alderman to insure its inventory.
*597 That policy, which was issued by General Casualty Company, included a $ 500 per-unit deductible for hail damage.
*644 ¶4 In May 2011, Camper Corral's inventory sustained approximately $ 100,000 in damage during a hail storm. Camper Corral made a claim under the General Casualty policy, which had been renewed each year up until that time. General Casualty paid the claim, and in September 2011, it renewed Camper Corral's policy for another year. The policy's hail damage deductible remained at $ 500 per unit.
¶5 In the summer of 2012, Camper Corral's inventory again sustained approximately $ 100,000 in hail damage. Camper Corral submitted a claim to General Casualty for that damage, which General Casualty paid. However, General Casualty subsequently provided Camper Corral with a notice of non-renewal of its policy. According to Rhonda Emer's trial testimony, after receiving the notice of non-renewal, Alderman advised her that he would need to shop in "other markets" to obtain coverage for Camper Corral's inventory, due to Camper Corral's history of hail damage claims. Before Camper Corral's policy through General Casualty expired in September 2012, Alderman contacted Emer and informed her that Western Heritage Insurance Company was willing to insure Camper Corral's inventory, but with a hail damage deductible of $ 5000 per unit. Emer agreed to accept that policy. She testified Alderman told her that if Camper Corral did not submit a hail damage claim during the next policy year, Alderman believed he could obtain a policy with a reduced deductible of $ 1000 per unit.
¶6 Emer further testified that Alderman called her in August 2013 and informed her that Western *598 Heritage had agreed to renew Camper Corral's policy for the 2013-14 policy year with a hail damage deductible of $ 1000 per unit, capped at $ 5000 total. According to Emer, she and Alderman then met in person and reviewed a "Garage Premium Summary" for the Western Heritage policy. The summary sheet listed the policy's deductible for "Dealers Phys Dam" as "Comp & Coll 1000/5000." For "Scheduled Auto: ... Phys Dam," the summary sheet listed the deductible as "1000 Comprehensive & Collision." Emer testified Alderman specifically informed her when reviewing the summary sheet that the policy had a $ 1000 per-unit deductible for hail damage claims, which was capped at $ 5000 total. Emer agreed to accept the renewed policy on those terms.
¶7 The 2013-14 policy was set to expire on September 30, 2014. Emer testified that, in August 2014, Alderman informed her he had obtained two quotes for the 2014-15 policy year-one from Western Heritage and one from Erie Insurance Company-both of which included hail damage deductibles of $ 1000 per unit. However, before he and Emer could meet in person to discuss those quotes, Camper Corral's inventory was again damaged in a hail storm on September 3, 2014.
¶8 Emer testified she first received a copy of Camper Corral's 2013-14 policy after the September 3, 2014 hail storm. She subsequently learned that the policy actually included a hail damage deductible of $ 5000 per unit, rather than $ 1000 per unit, and it did not include an aggregate hail damage deductible. Emer testified twenty-five campers were damaged during the September 2014 storm, and the total deductible therefore amounted to $ 125,000. After subtracting *599 that amount from Camper Corral's recovery, Western Heritage ultimately paid Camper Corral approximately $ 65,000.
¶9 Camper Corral filed the instant lawsuit in February 2015, asserting a single *645 claim against Alderman for negligence.[2] The complaint alleged that Alderman breached his duty of care to Camper Corral by procuring insurance coverage for the 2013-14 policy year that included a $ 5000 per-unit deductible for hail damage, even though he "knew that [Camper Corral] wanted insurance coverage without a $ 5,000 hail deductible." Alderman moved for summary judgment, arguing Camper Corral could not prevail on its negligence claim because there was no evidence that Alderman's conduct caused Camper Corral's damages. Specifically, Alderman argued there was "no evidence that [Camper Corral] could have procured a property insurance policy to insure the campers against hail with a $ 1,000 deductible per camper." Camper Corral opposed Alderman's summary judgment motion, and the circuit court ultimately denied it.
¶10 The case then proceeded to a jury trial. At trial, Camper Corral took the position that it was entitled to $ 120,000 in damages-the difference between its total deductible of $ 125,000 for the September 2014 hail damage claim and the $ 5000 aggregate deductible that Camper Corral believed its policy included. Before the case was submitted to the jury, Alderman moved for a directed verdict challenging the *600 sufficiency of the evidence.[3] As relevant to our disposition of this appeal, Alderman renewed his argument that Camper Corral had failed to prove his conduct caused its damages because there was "no evidence that it would have been possible or plausible for [Camper Corral] to procure a garage policy insuring the campers for hail with a $ 1,000 deductible and a $ 5,000 aggregate."
¶11 The circuit court agreed with Alderman and granted a directed verdict in his favor. In its written decision, the court explained that, although there was no Wisconsin case law directly on point, cases from other jurisdictions had held that a plaintiff alleging negligent procurement of an insurance policy
must present evidence that coverage would have been available if the agent had fulfilled its duty of care to the plaintiff. That is, [a] plaintiff can succeed if they are able to show that they would have been protected from the damages by an insurance policy that could *601 have been purchased in the insurance market at the time the alleged breach occurred.
The court concluded Camper Corral had presented no evidence demonstrating that, absent Alderman's alleged negligence, Camper Corral would have been able to obtain a policy containing a hail damage deductible less than $ 5000 per unit for *646 the coverage period at issue. The court therefore dismissed Camper Corral's negligence claim against Alderman, and Camper Corral now appeals.
DISCUSSION
¶12 As a threshold matter, we address an issue regarding the nature of Alderman's motion challenging the sufficiency of the evidence. In its oral ruling on the motion, the circuit court cited WIS. STAT. § 805.14(4), which provides in relevant part: "In trials to the jury, at the close of all evidence, any party may challenge the sufficiency of the evidence as a matter of law by moving for directed verdict or dismissal." However, in its subsequent written decision, the court referred to Alderman's motion as a "Motion for Summary Judgment, or in the alternative, Directed Verdict."
¶13 Camper Corral argues we should review the circuit court's decision using the summary judgment methodology because the court "relied on submissions outside the evidence at trial" in reaching its decision. Camper Corral is correct that the circuit court relied on evidence outside the trial record when addressing Alderman's alternative argument that dismissal was appropriate because Camper Corral had failed to introduce expert testimony regarding the standard of care. However, in the portion of its decision addressing Alderman's argument regarding causation, the court did not cite any evidence outside the trial *602 record. Camper Corral notes that the court cited an excerpt from expert witness Robert Sutton's deposition testimony in support of its ruling on causation, but that excerpt was read to the jury at trial. As such, we will review the court's ruling that Camper Corral failed to prove causation using the standards governing motions for directed verdict under WIS. STAT. § 805.14(4).
¶14 A motion for a directed verdict challenges the sufficiency of the evidence. Legue v. City of Racine , 2014 WI 92, ¶137, 357 Wis. 2d 250, 849 N.W.2d 837. A court may grant the motion only if it "is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." WIS. STAT. § 805.14(1). Because the circuit court is in a better position than this court to assess the weight and relevancy of the trial testimony, we give substantial deference to the circuit court's better ability to assess the evidence. Weiss v. United Fire & Cas. Co. , 197 Wis. 2d 365, 388-89, 541 N.W.2d 753 (1995). Consequently, we will not overturn a circuit court's decision to dismiss for insufficient evidence unless the record reveals that decision was "clearly wrong." Id. at 389, 541 N.W.2d 753 (citation omitted).
¶15 Camper Corral's complaint asserted a single claim against Alderman for negligence.[4] A negligence claim requires a plaintiff to establish four *603 elements: (1) the existence of a duty of care on the part of the defendant; (2) a breach of that duty of care; (3) a causal *647 connection between the defendant's breach and the plaintiff's injury; and (4) actual loss or damage resulting from the injury. Gritzner v. Michael R. , 2000 WI 68, ¶19, 235 Wis. 2d 781, 611 N.W.2d 906.
¶16 The circuit court concluded Alderman was entitled to a directed verdict on Camper Corral's negligence claim because Camper Corral had failed to prove that Alderman's conduct caused its damages. Camper Corral asserted its damages were the difference between its actual deductible for the September 2014 hail damage claim under the 2013-14 policy-$ 125,000-and the $ 5000 aggregate deductible for that claim that Camper Corral believed its policy included. However, the circuit court concluded there was no evidence in the trial record to support a finding that, absent Alderman's alleged negligence, Camper Corral would have been able to obtain a policy containing a hail damage deductible less than $ 5000 per unit. Without such evidence, the court concluded Camper Corral could not prove that Alderman's conduct in failing to obtain a policy with a lower deductible caused Camper Corral to sustain any damages.
¶17 Camper Corral argues the circuit court applied an incorrect legal standard in analyzing causation.
*604 Whether the court applied the proper legal standard is a question of law that we review independently. See State v. Greenwold , 181 Wis. 2d 881, 884-85, 512 N.W.2d 237 (Ct. App. 1994). Camper Corral contends that, contrary to the circuit court's conclusion, Camper Corral was not required to show that it actually would have been able to obtain a policy containing a lower deductible absent Alderman's negligence. Instead, Camper Corral argues it was only required to prove that policies with hail damage deductibles less than $ 5000 per unit were "generally available" at the time of the September 2014 hail storm. Camper Corral further contends there is "no dispute" that such policies were "generally available in the insurance marketplace" at that time.
¶18 We reject Camper Corral's argument that proof of the general availability of policies with deductibles less than $ 5000 per unit was sufficient to establish causation. Under Wisconsin law, the test for determining causation is whether the conduct at issue was a substantial factor in producing the plaintiff's injury. Estate of Cavanaugh v. Andrade , 202 Wis. 2d 290, 306, 550 N.W.2d 103 (1996). Here, Camper Corral's alleged injury was that its total deductible for the September 2014 hail damage claim was significantly higher than what Camper Corral anticipated. However, Alderman's conduct could only be a substantial factor in producing that injury if, absent his alleged negligence, Camper Corral would have been able to obtain a policy containing a hail damage deductible lower than $ 5000 per unit. If Camper Corral could not have done so, then Alderman's conduct had no effect on the ultimate amount of Camper Corral's deductible for *605 the September 2014 claim and, consequently, was not a substantial factor in producing that result.
¶19 As the circuit court correctly noted, no Wisconsin case to date has directly addressed whether a plaintiff alleging negligence by an insurance agent must establish causation by showing that, absent the agent's negligence, the plaintiff would have been able to obtain a policy containing the plaintiff's desired terms.[5] However, we find *648 persuasive the Minnesota Court of Appeals' decision in Melin v. Johnson , 387 N.W.2d 230 (Minn. Ct. App. 1986). There, Melin alleged that his insurance agent, Johnson, was negligent "in failing to inform Melin of limitations contained in *606 the insurance policy he procured." Id. at 232. The court concluded that, even assuming Johnson was negligent, Melin could not prevail because there was "no evidence that Johnson's negligence ... was a direct cause of Melin's loss." Id. at 233. The court reasoned, "The breach of duty does not result in Melin suffering the loss of his bargain unless there was evidence of other available coverage, and there was no such evidence." Id. Because all of the evidence indicated "that Melin would not have been able to secure other comparable insurance, without regard to whether Johnson notified him of the policy's limitations," the court concluded Johnson's negligence was not a "proximate cause" of Melin's damages. Id.
¶20 We also find instructive the reasoning in two cases addressing a different, but related, issue-i.e., proof of causation in a case where an insurance company is alleged to have unreasonably delayed in rejecting an insurance application. In one of those cases- Wallace v. Metropolitan Life Insurance Co. , 212 Wis. 346, 347, 248 N.W. 435 (1933) -Bell applied for a life insurance policy through an agent of Metropolitan Life. Metropolitan Life denied the application, after a physical examination revealed that Bell "was affected with mitral regurgitations of the heart." Id. at 348, 248 N.W. 435. However, no rejection notice was provided to Bell, and Metropolitan Life collected at least one premium from him. Id. Bell died just under two months after the physical examination. Id.
¶21 The administrator of Bell's estate sued Metropolitan Life, alleging it had an obligation "to act with reasonable promptness, and that by failing to do so and by accepting premiums after rejecting the application, it ha[d] rendered itself liable in damages or ha[d] become estopped to claim a rejection of the *607 application." Id. Implicit in the administrator's argument was the notion that, had Bell received timely notice of Metropolitan Life's rejection, he could have obtained comparable life insurance coverage from another source prior to his death. Our supreme court concluded that was not the case, explaining:
[T]here is no evidence tending to show that [Bell] could have obtained other insurance of the same kind and character. Whatever evidence there is in the case indicates that [Bell] had a disease known as leakage of the heart. The evidence is not clear as to whether this was sufficiently serious to warrant rejection, *649 but certainly there is no evidence that he was in sound health, and in view of his death within sixty days of the time of his application it is impossible to conclude that plaintiff has made any showing that other insurance could have been obtained. It is evident that plaintiff has proved no damages.
Id. at 350, 248 N.W. 435.
¶22 The Kansas Supreme Court reached a similar conclusion in Smither v. United Benefit Life Insurance Co. , 164 Kan. 447, 190 P.2d 183 (1948). In that case, Smither applied to purchase accident insurance from United Benefit and made a premium payment. Id. at 184. Shortly thereafter, Smither was injured in an accident and subsequently died. Id. United Benefit denied coverage, claiming no policy had been issued to Smither at the time of his death. Id. Smither's widow then sued United Benefit, asserting it had failed to notify Smither within a reasonable time that his application was rejected, "thereby inducing Smither during his lifetime to believe that his application had been accepted and he was insured." Id. at 184-85. This *608 cause of action was tried to a jury, which found in favor of United Benefit. Id. at 188-89.
¶23 On appeal, Smither's widow argued the trial court had erred by permitting a United Benefit underwriter to testify that: (1) a policy previously issued to Smither by a companion company of United Benefit had been canceled "on account of [Smither's] history of heart trouble"; and (2) "no company would insure an applicant who had such a history." Id. at 189. The Kansas Supreme Court held that this testimony was admissible because, in order to recover on her claim against United Benefit, Smither's widow needed to prove not only that United Benefit was negligent in failing to timely process Smither's application, but also that "if it had notified [Smither of the rejection] sooner he could have obtained other insurance." Id.
¶24 Smither , Wallace , and Melin support our conclusion that, in order to prevail on its negligence claim, Camper Corral was required to prove that it would have been able to obtain a policy containing a more favorable hail damage deductible absent Alderman's alleged negligence. Applying this standard, the circuit court properly granted Alderman a directed verdict. Camper Corral did not introduce any evidence at trial indicating that-in light of Camper Corral's two prior hail damage claims-it would have been possible for Camper Corral to obtain a policy with a hail damage deductible of less than $ 5000 per unit for the 2013-14 policy year.[6] Moreover, at trial, Alderman *609 introduced the following excerpt from the deposition of Camper Corral's own expert witness, Robert Sutton:
Question: Okay. So during the September 30, 2013 to September 30, 2014, policy, now that you have been provided with the amount of the two previous claims, do you think it's possible to get a policy with a 1,000/$ 5,000 aggregate deductible for wind and hail?
Answer: No.
Simply put, no credible evidence was introduced at trial to support a finding that, absent Alderman's alleged negligence, Camper Corral could have obtained a policy *650 with a hail damage deductible of less than $ 5000 per unit. See WIS. STAT. § 805.14(1). The circuit court's assessment of the evidence was not "clearly wrong." See Weiss , 197 Wis. 2d at 389, 541 N.W.2d 753 (citation omitted).
¶25 In the alternative, Camper Corral argues it proved its case under two other theories of liability-breach of contract and strict responsibility misrepresentation. It asserts Wisconsin applies "benefit of the bargain" damages to both breach of contract and strict responsibility misrepresentation claims. It further contends that "benefit of the bargain" damages "do not require a plaintiff to prove alternatives would have been available."
¶26 We decline to address these arguments because Camper Corral failed to raise them in the *610 circuit court. Camper Corral's complaint alleged a single cause of action against Alderman for negligence. Camper Corral never filed an amended complaint asserting additional claims for breach of contract or strict responsibility misrepresentation. Camper Corral's opening statement at trial did not reference either of those theories of liability; instead, Camper Corral asserted only that the evidence would show Alderman was negligent. Nor did Camper Corral raise any argument regarding breach of contract or strict responsibility misrepresentation in response to Alderman's motion for a directed verdict. Camper Corral has therefore forfeited its right to raise these arguments on appeal. See Tatera v. FMC Corp. , 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810. "We will not ... blindside trial courts with reversals based on theories which did not originate in their forum." State v. Rogers , 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).
¶27 In a single-sentence footnote, Camper Corral argues WIS. STAT. § 802.09(2)"permits amending the complaint to conform to the evidence at trial." However, Camper Corral never moved the circuit court to amend its complaint to conform to the evidence. Camper Corral has therefore forfeited its right to raise any argument on appeal that the court should have amended its complaint under § 802.09(2). See Tatera , 328 Wis. 2d 320, ¶19 n.16, 786 N.W.2d 810.
¶28 In summary, we conclude that in order to prevail on its negligence claim, Camper Corral was required to establish that, absent Alderman's alleged negligence, it would have been able to obtain an insurance policy containing a hail damage deductible of less than $ 5000 per unit for the coverage period at issue. The circuit court reasonably concluded there *611 was no credible evidence at trial to support a finding that Camper Corral could have obtained such a policy. Accordingly, the court properly granted Alderman a directed verdict on Camper Corral's negligence claim.
By the Court. -Judgment affirmed.

Because we affirm on the basis that Camper Corral failed to prove that Alderman's conduct caused its damages, we need not address the parties' arguments as to whether Camper Corral was required to produce expert testimony regarding the standard of care. See Turner v. Taylor , 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716.

Camper Corral also asserted a claim against Western Heritage for reformation of the 2013-14 insurance policy. However, the circuit court granted Western Heritage's motion for summary judgment on that claim, and Camper Corral has not appealed that decision.

Alderman initially filed his motion challenging the sufficiency of the evidence at the close of Camper Corral's case, pursuant to Wis. Stat. § 805.14(3) (2017-18). After hearing arguments from both parties, the circuit court took Alderman's motion under advisement. When the jury returned to the courtroom, Alderman presented his case by reading excerpts from the deposition transcript of Camper Corral's expert witness, Robert Sutton. After those excerpts were read to the jury, Alderman "renew[ed] the motion for directed verdict." In its oral ruling, the court referred to the motion as a motion for a directed verdict at the close of evidence under § 805.14(4) (2017-18). In its subsequent written decision, the court referred to the motion as a "Motion for Summary Judgment, or in the alternative, Directed Verdict." As explained in greater detail below, we treat Alderman's motion as a motion for a directed verdict. See infra ¶¶12-13.
All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

On appeal, Camper Corral suggests its complaint could also be construed as asserting a claim for negligent misrepresentation. However, Camper Corral concedes that the same analysis regarding causation and damages applies to the negligence and negligent misrepresentation claims. Just as a negligence claim requires a plaintiff to prove a causal connection between the defendant's negligence and the plaintiff's injury, see Gritzner v. Michael R. , 2000 WI 68, ¶19, 235 Wis. 2d 781, 611 N.W.2d 906, a negligent misrepresentation claim requires proof that the plaintiff relied on the defendant's negligent misrepresentation to the plaintiff's detriment, see Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA , 223 Wis. 2d 704, 721, 590 N.W.2d 1 (Ct. App. 1998).

On appeal, Camper Corral cites two Wisconsin cases in support of its claim that it was not required to prove it would have been able to obtain an insurance policy with the desired deductibles. However, neither case is on point.
In Appleton Chinese Food Service, Inc. v. Murken Insurance, Inc. , 185 Wis. 2d 791, 808, 519 N.W.2d 674 (Ct. App. 1994), we stated that "[d]amages arising out of a broker's failure to procure insurance are commonly determined by the terms of the policy the agent failed to procure." However, there was no dispute in Appleton Chinese Food Service that the insured qualified for its desired coverage. The insurance agent had simply failed to obtain that coverage due to a clerical error when preparing the insured's application. Id. at 798, 519 N.W.2d 674.
In Rainer v. Schulte , 133 Wis. 130, 133, 113 N.W. 396 (1907), our supreme court held it was "immaterial" whether the defendant-who had agreed to procure fire insurance for the plaintiff-"had authority to represent and bind some unnamed insurance company or some insurance agent" because the defendant "certainly had authority to bind himself to procure such insurance." Thus, evidence that the defendant had agreed to procure insurance for the plaintiff "was sufficient to take the case to the jury." Id. Again, there was no dispute in Rainer that, absent the defendant's conduct, the plaintiff would have been able to obtain the insurance he desired.

Camper Corral could have met its burden in this regard by introducing an expert witness's opinion that an insured with Camper Corral's claims history would have been able to obtain a policy with a hail damage deductible of less than $ 5000 per unit for the 2013-14 policy year. However, we do not agree with the circuit court that such expert testimony was the only way for Camper Corral to meet its burden of proof. Camper Corral could have instead introduced evidence that it was offered a policy from a different insurer for the 2013-14 policy year with a hail damage deductible of less than $ 5000 per unit.